IN the MATTER OF DISCIPLINARY PROCEED-
INGS AGAINST William E. GLASSNER, Jr.,
Attorney at Law.

Supreme Court

*No. 89-0737-D. Filed March 15, 1990.*

(Also reported in 452 N.W.2d 571.)

PER CURIAM. *Attorney disciplinary proceeding; attorney's license suspended.*

We review the recommendation of the referee in this attorney disciplinary proceeding that the license of the respondent, William E. Glassner, Jr., to practice law

in Wisconsin be suspended for one year as discipline for professional misconduct. That misconduct consisted of the following: representing several persons when his independent professional judgment on behalf of each was or was likely to be adversely affected by his representation of the others; continuing to represent a client in a loan transaction without fully disclosing a potential conflict of interest he had in the transaction; allowing an attorney representing one of his clients to examine his file concerning another client without that client's consent; creating false evidence by altering correspondence he had written; concealing or knowingly failing to disclose a letter he had written which was subject to discovery in pending litigation; asking one of his clients to conceal material he had sent her relating to transactions at issue in litigation.

We determine that the recommended discipline is the appropriate sanction for this misconduct. Notwithstanding that the misconduct does not appear to have been motivated by a desire for financial gain and that his clients incurred no monetary loss as a result of it, Attorney Glassner's representation of several persons with differing interests in a business transaction, one in which Attorney Glassner stood to have and eventually did have a financial interest, without disclosing the actual or potential conflicts constitutes a serious violation of an attorney's fundamental duty to clients. Attorney Glassner then engaged in further misconduct attempting to conceal his initial misconduct.

Attorney Glassner, who was licensed to practice law in Wisconsin in 1950 and practices in Milwaukee, has not previously been the subject of an attorney disciplinary proceeding, although in May, 1989, he was prohibited from practicing law as the result of his failure to comply with the court's continuing legal education rules.

He entered a no contest plea to all allegations of misconduct in this proceeding and, together with the Board of Attorneys Professional Responsibility, submitted findings of fact which the referee, Attorney Norman Anderson, incorporated into his report to the court.

That report discloses that Attorney Glassner represented a food products company, the principal owners of which were two families, the Mahlers and the Brachmans, each holding 46 percent of the stock. The corporation's articles and bylaws required that if a member of either family wanted to sell any stock, it first had to be offered to the seller's family; if no one in that family wanted to buy it, the stock could be sold to a member of the other family.

In July, 1984, a rift occurred in the Brachman family, resulting in the removal of Robert Brachman as corporate president. At the same time, Attorney Glassner was removed from the corporate board of directors but continued to serve as corporate attorney. Also at that time, Herbert Mahler, the other "principal" of the company, who had been represented by Attorney Glassner, retained other counsel to represent him.

Early the following year, when a member of the Mahler family wanted to sell corporate stock, Mr. Brachman offered to buy just enough of it to obtain control of the company, intending to have the corporation purchase the remainder. Attorney Glassner and Mr. Mahler's attorney sought to prevent that purchase by obtaining a loan to enable Mr. Mahler to purchase the stock.

Attorney Glassner contacted Mr. Doucette and Ms. Russell, two of his clients who were looking to invest money, and told them of this opportunity. Although he later claimed he had advised them of a potential conflict of interest and that he would not be representing either

of them in the proposed loan, he testified in a deposition that the corporation had paid for his time and travel in obtaining the loan and that Mr. Mahler was his client in the transaction; in an affidavit he signed several months later, he identified Mr. Doucette as his client. The deposition and the affidavit were given in the course of an action on Mr. Brachman's claim that Mr. Mahler and others had conspired to remove him as corporate president.

In arranging the loan transaction, rather than having Mr. Doucette and Ms. Russell each make loans directly to Mr. Mahler, Attorney Glassner had Mr. Doucette lend $300,000 to Ms. Russell's company, which in turn loaned Mr. Mahler $500,000. Attorney Glassner so structured this transaction in order that Mr. Doucette and Ms. Russell, who had taken back 10-year unsecured notes, would be able to obtain partial payment of principal if their respective capital needs required it by selling a portion of the note each held to the other. Attorney Glassner did not advise Mr. Mahler that he was structuring the transaction in this way for the lenders' benefit; he told him the entire loan was from Ms. Russell's company.

Mr. Doucette had told Attorney Glassner that he wanted Mr. Mahler's personal guaranty on the $300,000 note to protect him in the event Ms. Russell's company were unable to repay the loan. To accommodate that request, instead of preparing a personal guaranty, Attorney Glassner prepared a corporate guaranty, believing that Mr. Mahler's personal guaranty would not significantly add to Mr. Doucette's protection. When he had Mr. Mahler sign the guaranty, Attorney Glassner did not explain that it was a corporate guaranty, nor did he explain the difference between a corporate and a personal guaranty. Moreover, Attorney Glassner never

sought or obtained corporate approval for that guaranty or for the other corporate guaranty on the $500,000 note to Ms. Russell's company he prepared and had Mr. Mahler sign.

In late 1985, the company purchased a $500,000 insurance policy on Mr. Mahler's life, naming the corporation as owner and beneficiary. Without board approval, Mr. Mahler's wife was substituted as beneficiary of that policy and Attorney Glassner prepared an assignment of proceeds of that policy to Ms. Russell's company, had Mr. Mahler and a company vice-president sign the assignment and sent a copy of the policy and assignment to Ms. Russell and to Mr. Doucette. However, Attorney Glassner retained the original assignment form in his office and never submitted it to the insurance company. Attorney Glassner later stated that it was his intention that Mr. Mahler convert that policy to a whole life policy but it was subsequently impossible to do so at a reasonable premium rate, whereupon Attorney Glassner destroyed the original assignment form and told Mr. Mahler, Ms. Russell and Mr. Doucette that the assignment was ineffective and the original had been destroyed.

The Mahler loan was subsequently restructured and, ultimately, Mr. Doucette sold a $130,000 note to the estate of Attorney Glassner's deceased wife and sold a $300,000 note to a finance company of which Attorney Glassner was president and owned a one-half interest; Ms. Russell sold a $70,000 note to the employe's savings and profit-sharing account of the law firm in which Attorney Glassner practiced. As to the latter, Attorney Glassner claimed the note was purchased with his own personal portion of the firm's pension and profit-sharing plan.

In February, 1987, during the course of the litigation over Mr. Brachman's ouster as president of the company, Mr. Mahler's attorney was preparing an affidavit for Attorney Glassner to sign addressing the matter of this loan transaction. Discussing that matter with Mr. Mahler's attorney, Attorney Glassner said he might have sent a copy of Mr. Mahler's life insurance policy and the assignment of proceeds form, together with a cover letter, to Mr. Doucette and Ms. Russell. Attorney Glassner told Mr. Mahler's attorney to contact Mr. Doucette's secretary directly and agreed to telephone her first to prepare her for his call.

When Attorney Glassner telephoned the secretary and reviewed with her the cover letter with which he had sent the insurance policy and assignment form, he told her not to reveal to Mr. Mahler's attorney that portion of the cover letter that related to the corporate guaranty on the note to Ms. Russell, as that information was none of the attorney's business. Subsequently, when the attorney called the secretary, she read to him only the first two sentences of the cover letter, omitting the references to the guaranty, but she said there were other unrelated matters in the letter. The secretary then telephoned Attorney Glassner and told him she had done as he had requested.

Shortly thereafter, Attorney Glassner telephoned the secretary and asked her to help him draft another version of the cover letter, without references to the guaranty. When Mr. Doucette's secretary refused to do so, Attorney Glassner had his own secretary alter the original cover letter and place it in the Doucette file he maintained. Later that day, when he went to Mr. Mahler's attorney's office to review and sign the affidavit, he told the attorney that he had Mr. Doucette's file with him and gave it to him for his review. The attorney

discovered the cover letter and noted that it did not contain the second sentence that Mr. Doucette's secretary had read to him over the telephone two days earlier. Attorney Glassner suggested that the second sentence must have been merely a comment by the secretary.

In a meeting later that day with members of Attorney Glassner's law firm, Mr. Mahler's attorney learned that the cover letter Attorney Glassner had given him was not the original but an altered version that had been prepared that morning. One of Attorney Glassner's partners gave him the original letter and told him that Attorney Glassner had said he had given Mr. Mahler a corporate guaranty to sign without telling him what it was.

During the course of the litigation it was learned that, prior to the making of the loan to Mr. Mahler, Ms. Russell had told Attorney Glassner of her concern that her company might need capital during the life of the loan. In response, Attorney Glassner wrote her that, if there was a need for repayment of the principal, he would have his finance company make any partial payment that Ms. Russell might request. While the litigation was in progress and until Ms. Russell located the letter making that statement, Attorney Glassner denied its existence and the representations made in it.

Also while the litigation was in progress, Attorney Glassner told Ms. Russell that she would be subpoenaed and required to produce certain documents. When Ms. Russell told him she had a copy of the Mahler insurance policy Attorney Glassner had sent in connection with the loan, Attorney Glassner advised her to "bury it." It was also learned during the litigation that, prior to the closing of the loan, Mr. Doucette had relied upon Attorney Glassner's obtaining an insurance policy on Mr. Mahler's life as security.

On the basis of these facts the referee concluded as follows:

—by representing several individuals in the loan transaction when his independent professional judgment on behalf of each of them was or was likely to be adversely affected by his representation of the others, Attorney Glassner violated SCR 20.28(2);[1]

—by continuing to represent Ms. Russell and offering to have his finance company assist her if her company needed capital during the life of the loan, without fully disclosing the potential conflict of interest he had as officer, director and substantial shareholder of that finance company, he violated SCR 20.27;[2]

—by turning over his Doucette file to Mr. Mahler's attorney without Mr. Doucette's consent, he violated SCR 20.22(1)(a) and (c);[3]

—by altering the cover letter he had sent to Mr. Doucette's secretary, knowing it was to be used in connection with the affidavit to be filed in the litigation, he engaged in conduct involving dishonesty, fraud, deceit or misrepresentation, in violation of SCR 20.04(1) and (4),[4] and created false evidence, in violation of SCR 20.36(1)(f);[5]

—by concealing or knowingly failing to disclose the cover letter which was subject to discovery in the

[1] The corresponding provisions of the current Rules of Professional Conduct for Attorneys are SCR 20:1.7(a) and (b) and 20:1.9.

[2] The corresponding provision of the current Rules of Professional Conduct for Attorneys is SCR 20:1.8(a).

[3] The corresponding provisions of the current Rules of Professional Conduct for Attorneys are SCR 20:1.6 and 20:1.8(3)(b).

[4] The corresponding provision of the current Rules of Professional Conduct for Attorneys is SCR 20:8.4.

[5] The corresponding provision of the current Rules of Professional Conduct for Attorneys is SCR 20:3.3(a)(4).

litigation, he violated SCR 20.36(1)(c);[6]
—by asking Ms. Russell to "bury" the copy of the insurance policy he had sent her in connection with the loan transaction, he violated SCR 20.04(1) and (4).

As discipline for this misconduct, the referee recommended that Attorney Glassner's license to practice law be suspended for one year.

We adopt the referee's findings of fact and conclusions of law and accept his recommendation for discipline. Attorney Glassner abused his professional position as corporate counsel to obtain a benefit for one of the principals of that corporation, one who was not his client. In doing so, Attorney Glassner involved two other clients who were looking for investment opportunities, people whose interests differed from those of the corporation Attorney Glassner represented and those of the borrower. In the course of putting the loan together, Attorney Glassner misrepresented the nature of the guaranties he had Mr. Mahler sign, thereby imposing on his corporate client a liability it might have been unwilling to accept. In addition, Attorney Glassner himself had an interest in the transaction, as he declared his willingness to assist the lenders through the finance company in which he had a significant interest.

In all of this, Attorney Glassner failed to exercise his independent professional judgment on behalf of each of his clients. Then, when his actions were about to be uncovered in the course of litigation, Attorney Glassner altered a document he knew was to be used as evidence, knowingly failed to disclose a document he had written which was subject to discovery and asked a client to

---

[6]The corresponding provision of the current Rules of Professional Conduct for Attorneys is SCR 20:3.4(a).

conceal evidence subject to discovery. Attorney Glassner's misconduct in the loan transaction and his efforts to prevent its discovery warrant severe discipline. The fact that none of the participants in the transaction appears to have suffered any harm as a result does not mitigate the seriousness of that misconduct.

IT IS ORDERED that the license of William E. Glassner, Jr., to practice law in Wisconsin is suspended for a period of one year, commencing April 9, 1990.

IT IS FURTHER ORDERED that within 60 days of the date of this order William E. Glassner, Jr., pay to the Board of Attorneys Professional Responsibility the costs of this disciplinary proceeding, provided that if the costs are not paid within the time specified and absent a showing to this court of his inability to pay the costs within that time, the license of William E. Glassner, Jr., to practice law in Wisconsin shall be suspended until further order of the court.

IT IS FURTHER ORDERED that William E. Glassner, Jr., comply with the provisions of SCR 22.26 concerning the duties of a person whose license to practice law in Wisconsin has been suspended.

STEINMETZ, J., took no part.